# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1834-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.M.,

      Defendant,

and

F.M.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF  J.J.,

      a Minor.

_____

Submitted October 17, 2019 – Decided  October 23, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0013-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Phuong Vinh Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Hannah Francine Edman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (James Dey Harris, Designated Counsel, on the brief).

PER CURIAM

Defendant F.M.[1] appeals from the October 29, 2018 judgment of guardianship terminating his parental rights to his child, J.J. (John), born in October 2015.[2] Defendant contends that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by

---

[1] We refer to the adult parties by initials, and to the child by a fictitious name, to protect their privacy. R. 1:38-3(d)(12).

[2] The judgment also terminated the parental rights of John's mother, M.M., who voluntarily surrendered her parental rights to D.B., the maternal grandmother, who wants to adopt the child. M.M. has not appealed the trial court's decision to terminate her parental rights.

clear and convincing evidence. The Law Guardian supports the termination on appeal as it did before the trial court.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons set forth by Judge M. Patricia Richmond in her thorough and thoughtful oral decision rendered on October 29, 2018.

We will not recite in detail the history of the Division's involvement with John and his parents. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Richmond's decision. We add the following comments.

In June 2016, the Division obtained custody of John after M.M., who was already being investigated by the agency for smoking marijuana in front of John, was arrested for possession of crack cocaine. Prior to this point, M.M. had named another man as the baby's father, but an August 2016 paternity test revealed he was not a match. M.M. then suggested that defendant might be John's father, and told the Division he was incarcerated in West Virginia. The Division attempted to locate defendant both in New Jersey and West Virginia. In November 2016, the Division found defendant in a West Virginia jail

awaiting trial on a series of drug charges. Defendant agreed to a paternity test, which demonstrated that he was John's father.

In March 2017, West Virginia transferred John to New Jersey so he could begin serving a five-year prison sentence for aggravated assault. Defendant is not eligible for release on this New Jersey conviction until December 2020.

Defendant asked the Division to place John with either his sister, J.L., or his mother, R.M.B. However, the Division ruled out both women as possible placements, and they did not appeal these decisions.

Defendant also asked the Division to arrange for the child to visit him at the prison. Defendant thereafter had two visits with John before the prison returned defendant to West Virginia in July 2017, for his trial on the pending drug charges. Defendant was found guilty on all nine counts of the West Virginia indictment and sentenced to an indeterminate term between four and thirty-eight years. In May 2018, West Virginia transferred defendant to New Jersey to resume serving his sentence in this state for aggravated assault. It is not clear from the record whether defendant will have to return to West Virginia after his New Jersey sentence is completed.

After defendant returned to the New Jersey prison, he asked the Division to arrange monthly visits with John. However, Dr. Alan Lee, Psy.D., the

Division's expert in the field of forensic psychology, conducted a bonding evaluation of defendant and John. When the Division caseworker left the child with defendant, John began to cry. John's crying continued for the next ten to twelve minutes, growing steadily louder and more intense. Dr. Lee then ended the session. As a result, Dr. Lee recommended that no further visits be arranged before the guardianship trial began on August 2, 2018.

Dr. Lee testified that based on the abbreviated bonding evaluation, it was clear that defendant had no significant or positive psychological bond with John. Prior to the evaluation, defendant only had contact with the child twice. Thus, Dr. Lee concluded that there was a low risk of John suffering any harm if his relationship with defendant was terminated.

Dr. Lee also conducted a psychological evaluation of defendant. Dr. Lee opined that based upon his impulse control and behavioral attitude issues, defendant was unable to function as a minimally adequate parent, and would not be able to do so for the foreseeable future. Defendant conceded that even if he was released from prison in December 2020, he would not be able to attempt to care for John until sometime in 2021.

Dr. Lee performed a bonding evaluation of John's relationship with his grandmother, D.B. Dr. Lee found that John and D.B. had a strong psychological

attachment and that there was a significant risk that James would suffer severe and enduring harm if their relationship was terminated.

Defendant did not testify and did not present any witnesses at the trial.

In her extensive opinion, Judge Richmond reviewed the evidence presented at the two-day trial, and concluded that (1) the Division had proven all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and (2) termination of defendant's parental rights was in John's best interests. In this appeal, our review of the trial judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

Applying these principles, we conclude that Judge Richmond's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in her well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1834-18T3